UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

**CARLA MATTHEWS**, individually and
on behalf of others similarly situated,

        Plaintiff,

vs.

**GUTHY RENKER FULFILLMENT
SERVICES, LLC,** a Delaware limited
liability company,

        Defendant.

Case No.
Hon.


**COLLECTIVE/CLASS ACTION
COMPLAINT AND JURY DEMAND**

_____

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, CARLA MATTHEWS, individually and on behalf of all others similarly situated,

by and through her attorneys, hereby bring this Collective/Class Action Complaint against

Defendant, GUTHY RENKER FULFILLMENT SERVICES, LLC, and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

Fed. R. Civ. P. 23 by Plaintiff, CARLA MATTHEWS, individually and on behalf of all similarly

situated persons employed by Defendant, GUTHY RENKER FULFILLMENT SERVICES, LLC

(hereinafter "Defendant" or "GRFS"), arising from Defendant's willful violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the North Carolina Wage and Hour Act

("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.*

*2.*      "GRFS provides inbound call center and order fulfillment services for

Guthy|Renker, LLC and other partner clients. Founded in 1978, the company has over 650

1

employees nationwide." *Available at*: https://www.grfs.com/grfs-news.html.

3.    GRFS "operate[s] three large product fulfillment distribution centers — one in Orange County, CA and two near Asheville, NC, as well as three customer call centers — one in Covington, LA and two near Asheville, NC, encompassing more than 420,000 square feet and over 650 employees. Integration like that distinguishes Guthy|Renker Fulfillment Services from other fulfillment partners, and is one more way we help simplify your outsourcing decision." *Available at*: https://www.grfs.com/about-grfs.html.

4.    GRFS serves an impressive list of national clients representing a broad range of industries and specialty markets, including the following:

- Direct Marketing
- Infomercials and Direct Response TV
- Mass channel retail
- Nutritional supplements and Nutraceuticals
- Skin care, Cosmetics, Cosmeceuticals
- Fitness and Health Products
- Entertainment
- Lawn & Garden
- Household appliances
- Seminar and Professional Speakers
- Advertising
- Children's Markets
- Financial Markets
- Network and Multilevel Marketing
- Insurance
- Pharmaceuticals
- Sales
- Promotions
- Religious Groups
- Publishing

*Available at*: https://www.grfs.com/about-industry-expertise.html.

5.    At least as early as January 2013 Defendant began utilizing home-based customer service representatives to handle call center responsibilities:

2

**GRFS expands the workplace with @home jobs**

**ASHEVILLE, NC — January 21, 2013**

Most of the jobs being filled at Guthy|Renker Fulfillment Services over the next few weeks let you turn your morning commute into a walk down the hall.

Using online training modules and video conferencing that keeps supervisors in touch with their agents, the GRFS @Home program is enabling additional growth of the customer care services the company provides for their Guthy|Renker™ brands.

The @Home approach has worked so well that GRFS is adding more than 100 new positions over the next 60 days in an expansion of its customer service programs for computer technology and consumer products. A few commissioned sales positions are available as well, according to the company.

The company will host a job fair to help fill the new positions on Monday February 4th at its Call Center in Covington, LA and another on Friday February 8th at its 1845 Brevard Road headquarters in Arden, NC. Applicants may also visit the company's website www.grfs.com to apply online prior to the job fair.

Call Center Director Debbie Jones said that approximately two-thirds of new hires for 2013 are expected to go into the GRFS @Home Agent program. This is the first year GRFS plans to hire more agents working from home than in their brick and mortar facilities, according to Jones.

"Until we had our online training and supervision platforms built we were limited to hiring people who could come to our premises to train and work. Now we're able to deliver the information and support they need to be successful right into their homes," she said.
Most of the new jobs will be targeted to applicants with recent model computers and fast internet connections who qualify for the work-at-home program.

"At a certain point, we simply run out of space here in the call center. If we want to continue to expand our business, we can either keep building bigger buildings or fully utilize the new technologies," said Jones. "We now have the tools to extend the company beyond our physical facilities."

Applicants must live in either North Carolina or Louisiana. More information about the job openings is available at www.grfs.com/jobs.

*Available at*: https://www.grfs.com/grfs-news.html.

  6.  Defendant's home-based customer service representatives receive and respond to

3

customer calls on behalf of Defendant's clients. The home-based customer service representatives are hourly, non-exempt employees.

7.      Defendant requires its home-based customer service representatives to work a set schedule. Defendant does not compensate the home-based customer service representatives for all work performed; instead, Defendant only pays the employees for the time they are on the telephone and available to accept calls. This policy results in home-based customer service representatives not being paid for all time worked and for all of their overtime in violation of the FLSA and NCWHA.

8.      Defendant's home-based customer service representatives use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities.   These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them.

9.      Defendant's home-based customer service representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers and applications.

10.     Defendant's home-based customer service representative jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

11.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's home-based customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   Fact Sheet #64 at p. 2 (a copy of which is attached as *Exhibit*

4

*A*).

12. Plaintiff was employed by Defendant as a home-based customer service representative. In order to perform her job, Plaintiff was required to start-up and log-in to various, secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process took substantial time on a daily basis with said time ranging from 15 to 25 minutes per day.

13. Plaintiff was not actually "clocked in" for their shifts until *after* the computer start-up and log-in process was complete and she logged into the applicable programs, software, servers and applications, meaning that Plaintiff and all other Class members worked at least 15 to 25 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a home-based customer service representatives.

14. Additionally, at periodic times throughout each shift, Plaintiff would be disconnected from Defendant's software programs. During the disconnection period, Plaintiff was unable to take calls from Defendant's customers. It usually took Plaintiff 2 to 5 minutes to log back into these programs. Defendant did not pay Plaintiff for the time she was disconnected from software programs mid-shift.

15. Defendant provides its home-based customer service representatives with one unpaid 30-minute lunch break per shift.

16. In order to deduct a 30-minute lunch break from an employees' compensable time, the employee must be completely relieved of his or her employment duties for the entire 30 minutes. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The

employee must be ***completely relieved*** from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

17.     However, Defendant does not provide its home-based customer service representatives with a legitimately unpaid bona fide meal period. Instead, Defendant requires its home-based customer service representatives to have their computer and phone systems up and running *before* the end of their 30-minute lunch break so they can immediately make/take calls; thus, the home-based customer service representatives are required to return to their desks during their lunch breaks in order to commence the same computer program, software program, server and application, and login process.

18.     Plaintiff was required to log-out at the end of each shift. The log-out process took substantial time on a daily basis with said time ranging from 10 minutes to 20 minutes per day.

19.     Defendant required Plaintiff to "clock out" *prior* to them logging out of the computer programs, software programs, servers and applications, meaning that Plaintiff and all other Class members worked at least 10-20 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a home-based customer service representatives.

20.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-

related emails." See *Exhibit A*, at p. 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

21. Defendant knew or could have easily determined how long it takes for its home-based customer service representatives to complete the preliminary start-up and log-in process and Defendant could have properly compensated Plaintiff and the Class for the preliminary start-up and log-in work they performed, but did not. Defendant also knew or could have easily determined or tracked how long it takes for each home-based customer service representative to complete the postliminary computer log-out process, and Defendant could have paid Plaintiff and the Class for the postliminary work they performed, but did not. Further, Defendant knew or could have easily determined the average daily time that their customer service representatives are disconnected from the software programs and could have paid the employees for this time, and could have provided Plaintiff and the Class with their full and uninterrupted 30-minute lunch breaks, but did not. On behalf of themselves and hundreds of others similarly situated home-based customer service representatives, Plaintiffs seek to recover the full measure of back-pay and damages.

22. Plaintiff is a former home-based customer service representative who worked for Defendant on an hourly basis in Candler, North Carolina.

23. Plaintiff brings this action on behalf of herself and all other similarly situated hourly home-based customer service representative employees of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

25.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

26.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's home-based customer service representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

27.     This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendants are citizens of different states.

28.     A private party may also bring an action for damages for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.*   Plaintiff's state claims originate from the same facts that form the basis of her federal claims. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

29.     This court has personal jurisdiction over Defendant because systematically and continuously conducts business operations within the state of North Carolina.

30.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant operates customer contact centers in this district, employs employees in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

31.     Plaintiff is a resident of Candler, North Carolina who was employed by Defendant as an hourly home-based customer service representative from May 2013 to August 2013. Plaintiff signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

32.     Defendant, Guthy Renker Fulfillment Services, LLC, is a Delaware limited liability company that is licensed to do business in North Carolina. Defendant operates at least two brick and mortar call centers and fulfillment distribution centers in Arden, North Carolina, and, upon information and belief, has home-based customer service representatives employees located throughout North Carolina and other states. *Available at*: https://www.grfs.com/about-locations.html; https://www.grfs.com/grfs-news.html.

## GENERAL ALLEGATIONS

33.     Plaintiff served as a home-based customer service representative for Defendant from May 2013 to August 2013. Plaintiff was compensated at a rate of $10.50 per hour.

34.     Throughout her employment with Defendant, Plaintiff regularly worked off-the-clock as part of her job as a home-based customer service representative.

35.     In order to perform her job, Plaintiff was required to start-up and log-in to various, secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process took substantial time on a daily basis with said time ranging from 15 to 25 minutes per day.

36.     Plaintiff was not actually "clocked in" for their shifts until *after* the computer start-up and log-in process was complete and she logged into the applicable programs, software, servers and applications, meaning that Plaintiff and all other Class members worked at least 15 to 25 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff spent

9

starting up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a home-based customer service representatives.

37.    Additionally, at periodic times throughout each shift, Plaintiff would be disconnected from Defendant's software programs. During the disconnection period, Plaintiff was unable to take calls from Defendant's customers. It usually took Plaintiff 2 to 5 minutes to log back into these programs. Defendant did not pay Plaintiff for the time she was disconnected from software programs mid-shift.

38.    Further, Defendant does not provide its home-based customer service representatives with a legitimately unpaid bona fide meal period.  Instead, Defendant requires its home-based customer service representatives to have their computer and phone systems up and running *before* the end of their 30-minute lunch break so they can immediately make/take calls; thus, the home-based customer service representatives are required to return to their desks during their lunch breaks in order to commence the same computer program, software program, server and application, and login process.

39.    Finally, Plaintiff was required to log-out at the end of each shift. The log-out process took substantial time on a daily basis with said time ranging from 10 minutes to 20 minutes per day.

40.    Defendant required Plaintiff to "clock out" *prior* to them logging out of the computer programs, software programs, servers and applications, meaning that Plaintiff and all other Class members worked at least 10-20 minutes each per shift that they were never compensated for.  This off-the-clock time Plaintiff spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a home-based customer service representatives.

41.     At an estimated 15 to 25 minutes per day of unpaid preliminary computer start-up and log-in time, plus several additional minutes attempting to reconnect to the software programs, lunch-break time and post-shift computer log-out time, Plaintiff, and the putative Class, are owed back pay prior to liquidation and interest.

42.     At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work and preliminary start-up and log-in time, mid-shift connectivity issues, lunch-break time, and postliminary log-out activities Plaintiff performed.

43.     At all relevant times, Defendant controlled Plaintiff's work schedules, duties, protocols, applications, assignments and employment conditions.

44.     At all relevant times, Defendant was able to track the amount of time that Plaintiff spent starting up, logging in to, and logging out of Defendant's computer systems; however, Defendant failed to document, track or pay Plaintiff for the preliminary, mid-shift, lunch-break, and postliminary work that she performed in connection with each shift.

45.     At all relevant times, Plaintiff was a non-exempt hourly employee, subject to the requirements of the FLSA.

46.     At all relevant times, Defendant used its adherence and attendance policies against Plaintiff for her preliminary, mid-shift, lunch-break, and postliminary time worked and failed to pay for that time.

47.     At all relevant times, Defendant's policies and practices deprived Plaintiff of wages owed for the preliminary, mid-shift, lunch-break time, and postliminary activities Plaintiff performed.  Because Plaintiff typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff of overtime pay at a rate of 1.5 times her regular rate of pay.

48.     Defendant is a leader in the field of call center services and knew or should have known that Plaintiff and other home-based customer service representatives' time spent starting up, logging in to, dealing with mid-shift connectivity issues, on their lunch-break, and logging out of Defendant's computer systems is compensable under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

49.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All similarly situated current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years.*

(hereinafter referred to as the "Class"). Plaintiff reserves the right to amend this definition if necessary.

50.     Excluded from the Class are all Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

51.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

52.     The employment relationships between Defendant and every Class member is the same and differs only name, location, and rate of pay. The key issues – the amount of uncompensated preliminary start-up and log-in time, mid-shift time associated with software program connectivity issues, lunch-break time, and the amount of postliminary log-out time owed to each employee – does not vary substantially from Class member to Class member.

12

53.     The key legal issues are also the same for every Class member, to wit: whether the preliminary start-up and log-in time required to commence a session, the time associated with mid-shift connectivity issues, the unpaid lunch-break time, and the postliminary time spent logging out of Defendant's computer programs, software programs, servers and applications, after the end of her shift are compensable under the FLSA.

54.     Plaintiff estimates that the Class, including both current and former employees over the relevant period, will include several hundred members.   The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly home-based customer service representatives who worked in North Carolina for Defendant at any time during the last three years.*

(hereinafter referred to as the "Rule 23 North Carolina Class").  Plaintiff reserves the right to amend this definition if necessary.

56.     The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical.   Plaintiff reasonably estimates that there are hundreds of Rule 23 North Carolina Class members.   Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

57.     There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.   These common legal and

13

factual questions, include, but are not limited to, the following:

      a.   Whether the preliminary time Rule 23 North Carolina Class members spend on start-up and log- in activities each session is compensable time;

      b.   Whether the mid-shift time Rule 23 North Carolina Class members spend on software program connectivity issues is compensable time;

      c.   Whether the time Rule 23 North Carolina Class members spend on boot-up and login activities during their lunch break is compensable time;

      d.   Whether the postliminary time Rule 23 North Carolina Class members spend on log-out activities is compensable time;

      e.   Whether Rule 23 North Carolina Class members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing preliminary, mid-shift or postliminary activities, and if so, the appropriate amount thereof; and

      f.   Whether Defendants' non-payment of wages amount to a breach of contract.

58.    Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same Defendant's policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

59.    Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small

14

amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

61.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

62.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

63.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").   Plaintiffs reserve the right to amend this definition if necessary.

65.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.   Plaintiff reasonably

estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

66.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

        a.     Whether the preliminary time Rule 23 Nationwide Class members spend on start-up and log- in activities each session is compensable time;

        b.     Whether the mid-shift time Rule 23 Nationwide Class members spend on software program connectivity issues is compensable time;

        c.     Whether the time Rule 23 Nationwide Class members spend on boot-up and login activities during their lunch break is compensable time;

        d.     Whether the postliminary time Rule 23 Nationwide members spend on log-out activities is compensable time; and

        e.     Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract.

67.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

68.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are

contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

69. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

70. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

71. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

72. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

### (29 U.S.C. § 216(b) Collective Action)

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

73.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

74.    At all times relevant to this action, Defendant was subject to the provisions of 29 U.S.C. § 201, *et seq*.

79.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

80.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

81.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

82.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

83.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform 15 to 25 minutes of preliminary computer start-up and log-in time per session, but failed to pay these employees the federally mandated overtime compensation for all services performed.

84.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform a minimum of 2 to 5 minutes of daily mid-

shift work associated with software program connectivity issues, but failed to pay these employees the federally mandated overtime compensation for all services performed.

85.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform boot-up and login time during their unpaid 30-minute lunch break, but failed to pay these employees the federally mandated overtime compensation for any of the services performed.  As a result, Defendant owes Plaintiff and the Class wages for the full 30 minutes of those lunch breaks.

86.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform 10 to 20 minutes of postliminary computer log-out time per session, but failed to pay these employees the federally mandated minimum wage and/or overtime compensation for any of the services performed.

87.     The preliminary, mid-shift, lunch-break and postliminary off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

88.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated preliminary start-up and log-in time, the uncompensated mid-shift and lunch-break time, and the uncompensated postliminary log-out time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

89.     Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

90.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for home-based customer service representatives to

complete the preliminary start-up and log-in process, how long the employees worked mid-shift in connection with the software program connectivity issues, the amount of unpaid lunch-break time work the employees were performing, and how long it took to log-out after a home-based customer service representatives' shift, and they could have properly compensated Plaintiff and the Class for these preliminary, mid-shift, lunch break, and postliminary activities, but did not.

91.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 North Carolina Class Action)
### VIOLATIONS OF THE NORTH CAROLINA WAGE AND HOUR ACT, N.C. GEN. STAT. §§ 95-25.1, *et seq.*

92.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

93.     At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 Class employees were employees entitled to the NCWHA's protections.

94.     The NCWHA entitles employees to compensation for every hour worked in a workweek.  *See* N.C.G.S. § 95-25.3.

95.     The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* N.C.G.S.A. § 95-25.4.

96.     Defendant, Plaintiff, and the Rule 23 North Carolina Class members are "employers" and "employees" for the purposes of the NCWHA.

97.     Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

98.     As a result, Plaintiff and the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages.   Accordingly, Plaintiff and the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NCWHA at an amount to be proven at trial.  *See* N.C.G.S.A. § 95-25.22.

**Count III**

**(Rule 23 Nationwide Class Action)**

<u>**BREACH OF CONTRACT**</u>

99.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

100.     At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

101.      Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

102.      Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, has an hourly rate between $8.00 and $11.00 per hour.

103.      Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the preliminary, mid-shift, lunch-break and

postliminary activities that Defendant required or accepted.

104.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the preliminary start-up and log-in activities performed each session, the mid-shift work performed in connection with software program connectivity issues, for time spent on their lunch-breaks, and the postliminary log-out activities performed at the end of each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

105.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

108.    Defendant also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent doing preliminary, mid-shift, lunch-break and postliminary activities, which is a fundamental part of an "employer's job."

109.    The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

110.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Nationwide Class has been damaged, in an amount to be determined at trial.

111.    These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

      a.      Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

      b.      Certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

      c.      Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

      d.      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

      e.      Designating Plaintiff as the representatives of the FLSA collective action Class, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

      f.      Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

      g.      Declaring Defendant's violation of the FLSA was willful;

      h.      Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

      i.      Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

      j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

      k.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, CARLA MATTHEWS, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:   October 3, 2014.

                                        /s/ Edward B. Davis
                                        Edward B. Davis, NC Bar No. 27546
                                        BELL DAVIS PITT, P.A.
                                        227 W. Trade Street, Suite 2160
                                        Charlotte, North Carolina   28202
                                        704-227-0129
                                        ward.davis@belldavispitt.com

                                        *Local Counsel for Plaintiffs*

                                        Jason J. Thompson
                                        *(Pending Admission Pro Hac Vice)*
                                        MI Bar No. P47184
                                        Kevin J. Stoops
                                        *(Pending Admission Pro Hac Vice)*
                                        MI Bar No. P64371
                                        Jesse L. Young
                                        *(Pending Admission Pro Hac Vice)*
                                        MI Bar No. P72614
                                        SOMMERS SCHWARTZ, P.C.
                                        One Towne Square, Suite 1700
                                        Southfield, Michigan 48076
                                        248-355-0300
                                        jthompson@sommerspc.com
                                        kstoops@sommerspc.com
                                        jyoung@sommerspc.com

Timothy J. Becker
*(Pending Admission Pro Hac Vice)*
MN Bar No. 256663
Jacob R. Rusch
*(Pending Admission Pro Hac Vice)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*

**Exhibit A**


# Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees working in call centers.

## Characteristics

A call center is a central customer service operation where agents (often called customer care specialists or customer service representatives) handle telephone calls for their company or on behalf of a client. Clients may include mail-order catalog houses, telemarketing companies, computer product help desks, banks, financial services and insurance groups, transportation and freight handling firms, hotels, and information technology (IT) companies.

## Coverage

If the annual dollar volume of a call center's sales or business is $500,000 or more, and the enterprise has at least two employees, all employees of the enterprise are covered by the FLSA on an "enterprise" basis. An enterprise may consist of one establishment, or it may be made up of multiple establishments.

Additionally, the FLSA also provides an "individual employee" basis of coverage. If the gross sales or volume of business done does not meet the requisite dollar volume of $500,000 annually, employees may still be covered if they individually engage in interstate commerce, the production of goods for interstate commerce, or in an occupation closely related and directly essential to such production. Interstate commerce includes such activities as transacting business via interstate telephone calls, the Internet or the U.S. Mail (such as handling insurance claims), ordering or receiving goods from an out-of-state supplier, or handling the accounting or bookkeeping for such activities.

## Requirements

Covered nonexempt employees are entitled to be paid at least the federal minimum wage as well as overtime at time and one-half their regular rate of pay for all hours worked over 40 in a workweek. (This may not apply to certain executive, administrative, and professional employees, including computer professionals and outside sales, as provided in Regulations 29 CFR 541).

The FLSA requires employers to keep records of wages, hours, and other items, as specified in the recordkeeping regulations. With respect to an employee subject to both minimum wage and overtime provisions, records must be kept as prescribed by Regulations 29 CFR 516. Records required for exempt employees differ from those for non-exempt workers.

The FLSA also contains youth employment provisions regulating the employment of minors under the age of 18 in covered work, as well as recordkeeping requirements. Additional information on the youth employment provisions is available at www.youthrules.dol.gov.

**Typical Problems**

Hours Worked:  Covered employees must be paid for all hours worked in a workweek.  In general, "hours worked" includes all time an employee must be on duty, or on the employer's premises or at any other prescribed place of work, from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday.  Also included is any additional time the employee is allowed (i.e., suffered or permitted) to work.  An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.

Rest and Meal Periods:  Rest periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked.  *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal.

Recordkeeping:  A daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept.

Overtime:  Earnings may be determined on an hourly, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the regular hourly rate derived from all such earnings.  This is calculated by dividing the total pay (except for certain statutory exclusions) in any workweek by the total number of hours actually worked.  See Regulations 29 CFR 778.

Salaried Employees:  A salary, by itself, does not exempt employees from the minimum wage or from overtime.  Whether employees are exempt from minimum wage and/or overtime depends on their job duties and responsibilities as well as the salary paid.  Sometimes, in call centers, salaried employees do not meet all the requirements specified by the regulations to be considered as exempt.  Regulations 29 CFR 541 contain a discussion of the requirements for several exemptions under the FLSA (i.e., executive, administrative, and professional employees – including computer professionals, and outside sales persons).

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                             **1-866-4-USWAGE**
Frances Perkins Building                                             TTY: 1-866-487-9243
200 Constitution Avenue, NW                                             **Contact Us**
Washington, DC 20210

**Exhibit B**

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

**CARLA MATTHEWS**, individually and        Case No.
on behalf of others similarly situated,        Hon.

                    Plaintiff,

vs.

**GUTHY RENKER FULFILLMENT
SERVICES, LLC,** a Delaware limited
liability company**,**

                    Defendants.
_____

**CONSENT TO JOIN**

1.        Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.        I agree to be bound by any adjudication or court rulings in the lawsuit, whether favorable or unfavorable.

3.        I hereby designate the Sommers Schwartz, P.C. and Johnson Becker, PLLC law firms to represent me in the lawsuit under the terms and conditions set forth on the following page.

Signature:        _____

Print Name:        Carla Matthews

Street Address:  10 Anna Frances Way

City, ST, Zip:    Chandler, NC 28715

Telephone:        8285451427

Date Signed:      07/14/2014